IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DOMINION RESOURCES, INC., and<br>VIRGINIA ELECTRIC & POWER COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-0084C<br>(Judge Bruggink) |

DEFENDANT'S REPORT IN RESPONSE TO NOTICE OF
PRE-DISCOVERY CONFERENCE TO BE CONVENED ON APRIL 30, 2004

Pursuant to the Court's recent order, the Government respectfully provides its views regarding the manner in which this case should proceed along with the other 64 "spent nuclear fuel" cases now pending before the Court. For the reasons discussed below, the Government respectfully suggests that the Court should issue a limited stay of proceedings, including discovery, in all of the SNF cases filed since the plaintiffs' discovery in the coordinated discovery proceedings concluded and that the stay remain in effect until the currently scheduled trials in existing SNF cases have been completed. During the pendency of this limited stay, we would request that the Court resolve several potentially dispositive legal issues, which we will identify below, that arise in several of the pending cases. To the extent that the Court is not willing to stay all of the new cases, the Government must request that the Court institute coordinated discovery proceedings for any further discovery that the plaintiffs may require against the Government.

## DISCUSSION

### I. A STAY OF PROCEEDINGS UNTIL THE CURRENTLY SCHEDULED TRIALS ARE COMPLETED WILL ALLOW FOR THE EFFICIENT AND FAIR RESOLUTION OF ALL OF THE CASES PENDING BEFORE THE COURT

#### A. A Stay Of Proceedings In All Of The Newly Filed SNF Cases Will Promote Efficiency And Reduce The Issues That The Court Will Need To Resolve In Each Of These Cases

As previously explained in the motion to stay that the Government has filed in many of these cases, a stay of proceedings is necessary in the newly filed cases to allow for the resolution of legal and factual issues that are common to the cases. These issues include the minimum mandatory schedule for the acceptance of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") by which the Government was contractually obligated to accept contract holders' SNF and/or HLW; the Government's obligation to accept Greater-Than-Class-C radioactive waste; and the ability of contract holders to recover damages incurred prior to the actual partial breach of the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," 10 C.F.R. § 961.11, or to recover damages, under a partial breach of contract theory, that contract holders allege might be incurred sometime in the future. These issues have been or will be squarely presented in the trials that are currently scheduled to occur between now and January 2005. Resolution of these issues in these lead cases will streamline the Court's consideration of the remainder of these cases.

A decision not to stay the newly filed cases will vitiate the "lead" cases process that the Court instituted in response to the Government's previous motion to consolidate the SNF cases. Specifically, the Chief Judge of this Court selected six cases that it identified as "lead" or "accelerated" cases for the purpose of resolving the legal and factual issues that the Government

had presented in various partially dispositive motions filed in all of the cases existing at that time. One of those cases has already completed a trial regarding the plaintiff's damages, Indiana Michigan Power Co. v. United States, No. 98-486C (Fed. Cl.), three others are scheduled for trial beginning July 12, 2004, Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), & Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Fed. Cl.); and another "lead" case is scheduled for trial beginning late November 2004, Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.).[1] Given the significance of the issues in these cases, we anticipate that the United States Court of Appeals for the Federal Circuit will review the decisions in those cases and that the Federal Circuit's rulings will provide dispositive guidance regarding the threshold issues in all of the SNF cases pending before this Court.

"The power of a federal trial court," including this one, "to stay its proceedings, even for an indefinite period of time, is beyond question." Cherokee Nation of Okla. v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citing Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254; see Clinton v. Jones, 117 S. Ct. 1636, 1650 (1997) ("District Court has broad discretion to stay proceedings"). "Moreover, lower courts, in addressing a request for a stay, often try to 'maximize the effective utilization of judicial

---

[1] No further proceedings have been scheduled in Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.), the sixth "lead" or "accelerated" case, pending this Court's resolution of pending motions in that case. However, the Court has scheduled trial in Sacramento Municipal Utility District v. United States, No. 98-488C (Fed. Cl.), to begin in late January 2005.

resources and to minimize the possibility of conflicts between different courts.'" New York Power Auth. v. United States, 42 Fed. Cl. 795, 799 (1999) (quoting 5A C. Wright & A. Miller, Federal Practice & Procedure § 1360 (2d ed. 1990)). Reduction of the costs of litigation to the parties and the likelihood that a stay would ultimately simplify the issues that the Court otherwise would have to resolve are important factors supporting a stay of proceedings. See In re Laughlin Prods. Patent Litig., 265 F. Supp. 2d 525, 530 (E.D. Pa. 2003); Gioello Enters. Ltd. v. Mattel, Inc., No. 99-375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001); see also Laba v. Lockheed Martin IMS Corp., No. 97-926, 1998 WL 187800, at *2 (E.D. La. 1999) ("Before undertaking the arduous and time-consuming task – both for the parties and for the Court – of crafting appropriate parameters for plaintiff's discovery, however, it appears to me that the most efficient, cost-effective and reasonable means of approaching discovery and trial preparation in this case is to stay all discovery and other proceedings in this matter in light of the important proceedings in the Louisiana Supreme Court that defendant has noted in its motion papers."). Given the strong likelihood that appellate court resolution of the threshold issues in the pending cases will eliminate the need to engage in extensive discovery and trial proceedings in these cases on these threshold issues, a stay of proceedings is warranted.

"The rule of thumb is that where there is duplicative litigation in federal courts, i.e., where two courts have before them the same parties and issues, litigation should continue in the court in which the suit first began" or in "which case has made the greatest progress." New York Power Auth. v. United States, 42 Fed. Cl. 795, 802 (1999). Here, the same Standard Contract terms are at issue in all of the 65 pending SNF cases, and several of those cases are substantially

further developed than those cases that were just recently filed. Accordingly, to allow for efficiency and judicial economy, the Court should follow this "rule of thumb."

Most of the plaintiffs agree that the cases should be stayed for at least some period of time. The plaintiffs in several of these cases suggest that the cases be stayed for a period of six months, at which time the parties would file a status report with the Court to assess the "continued desirability of a stay."[2] Several other plaintiffs have suggested that the cases be stayed until the end of 2004, at which time a status conference be held to determine how to proceed with the cases.[3] The plaintiffs in two other cases, Portland General Electric Co. v. United States, No. 04-009C (Fed. Cl.), and BWX Technologies, Inc. v. United States, No. 04-096 (Fed. Cl.), either have joined in the Government's request for a stay or do not oppose the Government's motion.

---

[2] These cases include Interstate Power & Light Co. v. United States, No. 04-067C (Fed. Cl.); Constellation Generation Group, LLC v. United States, No. 04-068C (Fed. Cl.); Cleveland Electric Illuminating Co. v. United States, No. 04-069C (Fed. Cl.); PPL Susquehanna, LLC v. United States, No. 04-070C (Fed. Cl.); Wisconsin Public Service Corp. v. United States, No. 04-071C (Fed. Cl.); Dominion Resources, Inc. v. United States, No. 04-083C (Fed. Cl.); and Dominion Resources, Inc. v. United States, No. 04-084C (Fed. Cl.). By order dated April 2, 2004, the Court in Southern California Edison Co. v. United States, No. 04-109C (Fed. Cl.), deferred ruling on the Government's stay motion, and plaintiff has not filed a response to the Government's motion. However, Government counsel understands, based upon conversations with counsel for plaintiff, that Southern California Edison would not oppose a similar six-month stay with a requirement for a status conference.

[3] These plaintiffs include those in Pacific Gas & Electric Co. v. United States, No. 04-074C (Fed. Cl.); Pacific Gas & Electric Co. v. United States, No. 04-075C (Fed. Cl.); Union Electric Co. v. United States, No. 04-097C (Fed. Cl.); TXU Generation Co. v. United States, No. 04-098C (Fed. Cl.); Kansas Gas & Electric Co. v. United States, No. 04-099C (Fed. Cl.); Texas Genco, LP v. United States, No. 04-100C (Fed. Cl.); and Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.).

Only three of the plaintiffs in the 21 cases in which the Government filed motions to stay oppose the entry of a stay for any period of time.[4] The plaintiff in Illinois Power Co. v. United States, No. 04-133C (Fed. Cl.), argues that it will not benefit from decisions in any of the "lead" cases because it is only seeking to recover the costs of its investment in the Private Fuel Storage, LLC ("PFS") initiative. However, the recoverability of PFS investments is already being litigated in the Indiana Michigan case, and the reasonableness of Indiana Michigan's investment in PFS and Indiana Michigan's ability to recover the costs of that investment should both be decided in that case. Accordingly, Illinois Power will benefit from a stay of proceedings, at least until a decision is issued in Indiana Michigan, because that decision will guide resolution of the sole issue in the case brought by Illinois Power.

The plaintiffs in Energy Northwest v. United States, No. 04-010C (Fed. Cl.), and South Carolina Electric & Gas Co. v. United States, No. 04-101C (Fed. Cl.), also oppose the Government's motion to stay their cases, arguing that the Government's concern about inconsistent rulings is "speculative" and that any concerns about burdensome discovery can be eliminated through "efficient coordinated discovery." These plaintiffs argue that they will be harmed because the resolution of their cases will be delayed and complain that the Government has not identified a specific period of time for the stay. As these plaintiffs acknowledge, however, further discovery against the Government may not be necessary, given the discovery that has already been taken. Moreover, these plaintiffs waited to file their complaints until

---

[4] The Government does not know the position of the plaintiff in FPL Energy Seabrook, LLC v. United States, No. 04-096C, regarding the Government's motion to stay because plaintiff was granted an enlargement of time to respond to the Government's motion until today, April 23, 2004.

recently and should not be heard to complain if their cases are stayed pending resolution of cases filed six years ago.

Recognizing that the large majority of the plaintiffs, in their responses, state the need for the period of the stay to be specifically delineated, the Government requests that the stay be entered until March 1, 2005. By this date, all of the currently scheduled trials will be concluded and decisions may be issued in at least some of the cases. At that time, the Court should convene a status conference to determine what further discovery, if any, will be allowed against the Government in a coordinated proceeding and establish an order in which the cases will proceed to trial.

### B. During The Pendency Of The Stay, The Court Should Resolve Legal Issues That Could Dispose Of Or Narrow Disputes In Several Cases

During the pendency of any stay of proceedings in the newer SNF cases, the Court could, and should, resolve several legal issues that some of these cases have now raised.

(1) Several of the new cases involve claims not by contract holders, but by former shareholders or former owners of minority interests in contract holders who allegedly sold their interests in the contract holders at a diminished value. The Government intends to file motions to dismiss or for summary judgment in those cases, given the lack of a viable claim stated by those plaintiffs. The cases that we have currently identified that raise such claims are Atlantic City Electric Co. v. United States, No. 04-36C (Fed. Cl.); Canal Electric Co. v. United States, No. 04-35C (Fed. Cl.); Delmarva Power & Light Co. v. United States, No. 04-34C (Fed. Cl.); and United Illuminating Co. v. United States, No. 04-129C (Fed. Cl.).

(2) A few cases involve a plaintiff that is a former contract holder which sold its nuclear reactor, and assigned its Standard Contract, to a third party. The former contract holder plaintiff alleges that the sales price that it obtained was diminished as a result of the Government's partial breach of the Standard Contract. The ability of a former contract holder to recover an alleged diminished sale price may be amenable to resolution as a matter of law.

(3) Several cases involve plaintiffs that have not paid their one-time fee to the United States. The non-payment of the one-time fee raises issues that affect the plaintiffs' ability to recover damages from the Government for the alleged partial breach of the Standard Contract. The cases that we have identified that involve this issue include Cleveland Electric Illuminating Co. v. United States, No. 04-69C (Fed. Cl.); Constellation Generation Group, LLC v. United States, No. 04-68C (Fed. Cl.); Dominion Resources, Inc. v. United States, No. 04-83C (Fed. Cl.); Entergy Nuclear Vermont Yankee v. United States, No. 03-2663C (Fed. Cl.); Exelon Generation Co. LLC v. United States, No. 04-104C (Fed. Cl.); Niagara Mohawk Power Corp. v. United States, No. 04-124C (Fed. Cl.); Niagara Mohawk Power Corp. v. United States, No. 04-125C (Fed. Cl.); Rochester Gas & Electric Co. v. United States, No. 04-118C (Fed. Cl.); Systems Fuels, Inc. (Entergy Arkansas) v. United States, No. 03-2623C (Fed. Cl.); and United Illuminating Co. v. United States, No. 04-129C (Fed. Cl.).

(4) As previously stated, some cases involve former contract holders that have assigned their contracts to new parties, and now both the former contract holder and the new contract holder have both filed suit against the Government regarding the same Standard Contract. In some instances, additional lawsuits have been filed by former shareholders or minority interest owners of former or current contract holders. Some of the cases involving the

same Standard Contract are pending before different judges of this Court. Issues regarding the reassignment of those cases to one judge, who can decide all issues relating to that Standard Contract, and possible consolidation of those cases into one proceeding may be appropriate, particularly where a former contract holder, shareholder, or minority interest owner is claiming that the assignee plaintiff paid a reduced price for the assignor's assets and that the Government, not the assignee, should reimburse the assignor or other interest holder for that alleged loss.

(5) Various issues relating to the assignments that former contract holders have made to new contract holders, both of which are plaintiffs before this Court, may be amenable to resolution dispositive motions, including a former contract holder's ability to assign its past damages claims along with its Standard Contract.

(6) Two cases, both filed by General Electric Company (Nos. 04-107C and 04-108C) include claims based upon General Electric's alleged status as a third-party beneficiary of Standard Contracts into which other nuclear utilities entered with the Government. Again, this issue may be resolved upon dispositive motion without discovery.

Accordingly, a limited stay of proceedings in these cases does not mean that these cases cannot progress and that dispositive issues that will otherwise have to be decided cannot be resolved at an early stage of litigation. The stay that we request would allow the Court, in the newer SNF cases, to resolve these issues during the pendency of that stay so that, when the Court has resolved other threshold issues in the "lead" or "accelerated" cases, the Court will already have addressed these additional issues. The limited stay that we have proposed will promote efficiency, cost-effectiveness, and judicial economy.

## II. TO THE EXTENT THAT THE COURT DOES NOT STAY THESE CASES, THE COURT SHOULD INSTITUTE COORDINATED DISCOVERY PROCEEDINGS FOR ANY FURTHER DISCOVERY THAT PLAINTIFFS REQUIRE FROM THE GOVERNMENT

The Court's rules of procedure give it "broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation." Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 803-04 (Fed. Cir. 1999) (citing Fed. R. Civ. P. 16(b), (c); 26(b); 42(b)); see Olivieri v. Rodriguez, 122 F.3d 406, 409 (7th Cir. 1997) ("[a] district judge's discretion in supervising pretrial discovery is broad"), cert denied 522 U.S. 1110 (1998). "Pretrial discovery is time-consuming and expensive; it protracts and complicates litigation and judges are to be commended rather than criticized for keeping tight reins on it." Olivieri, 122 F.3d at 409. Public officials "should not have to spent their time giving depositions in cases . . . unless there is some reason to believe that the deposition will produce or lead to admissible evidence." Id. at 409-10. Rule 26(b)(2) of the Federal Rules of Civil Procedure, which the Court has adopted, "empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (quoting Fed. R. Civ. P. 26(b)(2)); see Manual for Complex Litigation §§ 21.422 & 21.451 (1995) (encouraging parties and courts to devise methods "to facilitate the orderly and cost-effective acquisition of relevant information and materials," with a balancing of "efficiency and economy against the parties' need to develop an adequate record for summary judgment or trial" and avoidance of cumulative depositions).

To the extent that the Court does not stay all of the cases that have been filed since the conclusion of the prior coordinated discovery proceedings, the Court should order all of the existing plaintiffs to take, and complete, their discovery on a coordinated basis. Without coordination, which would limit the number of hours that any potential deponent would have to sit for deposition and the number of times that the deponent would have to appear, particular witnesses would likely be in repetitive and time-consuming depositions in numerous cases over a course of months or years. The coordinated proceedings would require that the plaintiffs join together to formulate and serve written discovery requests upon the Government and that counsel for plaintiffs join together to take only one deposition of any Government witness. The Government and the utility plaintiffs in the previous coordinated discovery operated under a set of procedures governing these depositions that the Government respectfully seeks to have implemented again. App. 21-35. Absent coordination, the Government will be subject to written discovery requests and Government witnesses will have to sit for deposition in each of these new cases. Proceeding in such a manner will place burdens on the same individuals who are charged with constructing and opening a repository so that the DOE can meet its obligations pursuant to the Standard Contract at issue. To eliminate this possibility, and to preclude repeated episodes of discovery over the course of time, the Court, to the extent that it does not adopt the limited stay of proceedings that we have suggested, should require all plaintiffs to conduct any discovery that they want in a coordinated discovery proceeding.

Further, in light of the extensive discovery that numerous plaintiffs have already obtained from the Government – including written discovery, the production of hundreds of thousands of pages of documents, and numerous extensive depositions – the Court, before any plaintiff is

allowed to take additional discovery (including new depositions), should required the plaintiff to identify, with specificity, the specific discovery that they need and the reasons that the discovery which has already occurred does not satisfy those requirements. To date, the Government has produced approximately 833,000 pages of documents in the coordinated discovery proceedings and in response to discovery requests served in the three Yankee cases, Indiana Michigan, and Commonwealth Edison.[5] Sixty-six depositions of 45 Government witnesses have been taken in the coordinated discovery and in Yankee Atomic, Commonwealth Edison and Indiana Michigan. In addition, the Government has provided access to a records database maintained by the Office of Civilian Radioactive Waste Management ("OCRWM"), the office charged with implementing the terms of the NWPA and the Standard Contracts. These documents and depositions have covered "schedule" issues as well as the Government's expected defenses to the plaintiffs' known damages claims and have been produced and conducted as recently as February and March of this year.[6]

The Government is prepared to provide these same documents, deposition transcripts, and access to counsel for the new plaintiffs and impose no conditions upon the use of this material outside the requirements and limitations imposed by the Court's rules and the rules of evidence.[7]

---

[5] The Government recently produced to the plaintiff in Sacramento Municipal Utility District v. United States, No. 98-488C (Braden, J.), copies of all documents produced to the Yankee plaintiffs, Commonwealth Edison, and Indiana Michigan since the close of coordinated discovery proceedings as part of its initial disclosures.

[6] Until the Government is provided with the actual claims of each of the plaintiffs, it cannot necessarily identify all of the claims against which it may have to defense or the defenses that it may raise.

[7] By the Government's count, there are 15 different law firms or in-house counsel representing the plaintiffs in the 65 pending spent nuclear fuel cases. Only six of these law firms

Prior to the production of this material, the Court will need to enter the same protective order in the new cases that Judge Sypolt previously entered in other cases on May 9, 2002, as well as the order governing access to the RIS-web that Judge Sypolt entered on February 1, 2002. Copies of these orders are attached for the convenience of the Court. App. 1-9, 10-20. In addition, we respectfully request that the Court enter the e-mail preservation order, a copy of which is attached at pages 36 to 48 of the appendix to this submission, that it entered in the prior SNF cases to confirm the parties' obligations to preserve and search e-mail tapes.

Once the new plaintiffs have access to this prior discovery, they should be required to identify with specificity and justify the further discovery they need. The burdens imposed by the previous plaintiffs' discovery requests have been great. To date, the Government has searched for and produced documents on five separate occasions. Moreover, many of the Government's witnesses were deposed over several days or have been deposed on several different occasions. As noted in the Government's motion to stay, the Government witnesses , documents and other sources of information are all the same. Further, the Government's responses to the discovery propounded by the lead plaintiffs in the damages phase demonstrate that the Government does not have documents relevant to or individuals knowledgeable about any specific damages claims to be made by the plaintiffs. To require these same deponents and documents custodians to respond to the same requests for discovery will be too great a drain upon the resources of the same organization charged with meeting DOE's obligations under the contract. As acknowledged by the plaintiffs in Energy Northwest v. United States, No. 04-010C, and South

---

represent plaintiffs that did not participate in the coordinated discovery proceedings or have not since been provided the documents and deposition transcripts from those proceedings.

Carolina Electric & Gas Co. v. United States, No. 04-101C, there may be no need for additional discovery, given that plaintiffs can use the discovery previously taken to the extent provided by the Court's rules and the rules of evidence. As previously explained, Rule 26(b)(2) of the Federal Rules of Civil Procedure, which this Court has adopted, "empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" Patterson, 281 F.3d at 681. Given that previous plaintiffs with substantially similar cases have engaged in extensive discovery into the matters at issue in these cases, the Court should not permit wholesale reopening of that discovery except for limited purposes that are specifically identified and supported by the plaintiffs.

## III. TRIALS IN THESE CASES SHOULD BE SCHEDULED IN THE ORDER IN WHICH THEY WERE FILED OR, IN THE ALTERNATIVE, IN A COORDINATED MANNER

Unlike the discovery conducted by the utility plaintiffs, the discovery that the Government will have to conduct will be individual to each contract holder plaintiff. The discovery will be based upon the claims that the contract holder or other plaintiff advanced. Because the Government, unlike the plaintiffs, cannot pool its discovery of its opposing party with the discovery conducted by other parties, the Government's discovery of the various SNF plaintiffs will be collectively more time-consuming than the discovery that the plaintiffs need from the Government. The Government must have sufficient time to conduct this discovery. To the extent that the Court plans for each of these cases to proceed to trial, the Court should establish a coordinated method of identifying trial dates and scheduling trials in a manner that

will allow the Government a fair and adequate opportunity fully to investigate, through discovery, the information underlying each plaintiff's damages claims.

One manner in which the Court could coordinate trials of these cases would be to schedule them on the basis of the date upon which the complaints were filed. Ten cases were filed in 1998, and another three cases filed between 1999 and 2001. Trials have already been conducted or scheduled in six of the original 10 cases. To the extent that trials become necessary in the remaining four cases filed in 1998 become necessary following the Court's resolution of the Government's pending motions in those cases, the trials in those cases should be conducted before consideration is given to the cases filed after 2001.

The conduct of these cases to date has shown that the Government has to conduct individualized discovery against each utility plaintiff on the claims that plaintiff sets forth. The Government's discovery is more efficient and focused when the Government is provided with a "claim" that sets forth exactly what costs are being claimed. In Indiana Michigan, the Government was provided with a claim and most of the supporting documentation for that claim on August 12, 2003. Although this claim was revised and new expert reports were allowed to be filed, the Government was able to conclude its discovery and be ready for trial in eight months. If plaintiffs were required to present their claims in this manner, a schedule could be established to move these cases to trial.

As noted above, trials are scheduled in the Yankee cases, ComEd and SMUD between now and February 2005. Pursuant to an order dated April 7, 2004, the Government is also scheduled to propose a pretrial schedule in Southern Nuclear Operating Co. v. United States, No. 98-614C (Merow, S.J.), by May 7, 2004. No further proceedings have yet been scheduled in

Florida Power & Light Co. v. United States, No. 98-483C (Sypolt, J.), the remaining "lead" case, pending resolution of the motions that are pending in that case. In any event, regardless of the manner in which the Court schedules further proceedings in any of these cases, it needs to do so in a coordinated manner that protects the Government against duplicative discovery demands, simultaneous proceedings before different judges regarding the same factual and legal issues, and scheduling that precludes the Government from fully developing its defenses to each of the SNF cases.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-9640
Fax: (202) 514-8640

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
MARTHA S. CROSLAND
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

April 23, 2004

CERTIFICATE OF FILING

I hereby certify that on this 23rd day of April 2004, a copy of foregoing "DEFENDANT'S REPORT IN RESPONSE TO NOTICE OF PRE-DISCOVERY CONFERENCE TO BE CONVENED ON APRIL 30, 2004" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.