IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **DOMINION RESOURCES, INC.,**<br><br>and<br><br>**VIRGINIA ELECTRIC & POWER COMPANY,**<br><br>Plaintiffs,<br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | No. 04-0084C<br><br>Judge Bruggink |

**JOINT STATUS REPORT**

Pursuant to the Court's order dated January 5, 2006, the parties respectfully file this joint status report. The parties state their positions separately, below.

***Plaintiffs' Report and Request to Lift Stay***

*A.* Background.

This case is one of a number of spent nuclear fuel damages cases currently pending before the Court. Plaintiffs Dominion Resources, Inc. and Virginia Electric & Power Company (collectively for these purposes, "Dominion") seek damages for breach of contracts between Dominion and the Department of Energy (DOE), which required DOE to commence accepting spent nuclear fuel on January 31, 1998.[1] Dominion filed the lawsuit on January 23, 2004. On May 18, 2004, the Court granted a jointly-requested stay of proceedings. Since that time, the

[1] A substantially similar report is being filed in Case No. 04-83C (Bruggink, J.), which involve similar claims at other nuclear power plants by another Dominion subsidiary.

parties have jointly requested periodic extensions of the stay, the most recent of which expires by its terms on June 30, 2006.

The most fundamental issues initially posed in these spent nuclear fuel cases involved treatment of "future" damages. Because DOE's breach is continuing, plaintiffs such as Dominion will continue to suffer damages for many, many years into the future. As significant as the already-incurred damages are, those future damages may well approach or exceed already-incurred costs. Accordingly, actions that might jeopardize recovery of those future damages (such as premature pursuit of a lump sum recovery in the present suit that could act as a bar to future recovery efforts) presented unacceptable risks, in the view of Dominion. Issues regarding recovery of future damages were squarely presented in the first trial of a spent nuclear fuel case in March of 2004, and the subsequent appeal of that case on the merits.

In a decision that became final and binding in December of this past year, the Federal Circuit definitively resolved questions about future damages. The Court of Appeals held that under the partial breach theory necessarily asserted by domestic nuclear utilities in these circumstances, recoverable damages are "limited to those costs incurred prior to the date of [plaintiff's] suit." *Indiana Michigan Power Company v. United States*, 422 F.3d 1369, 1377 (Fed. Cir. 2005).[2] The Court made clear, however, that a plaintiff utility may "obtain recovery for post-breach damages as they are incurred," 422 F.3d at 1377, and that "exceptions to the rules of merger and bar" are applicable to protect a plaintiff's right to pursue prospective damages in subsequent, future actions. 422 F.3d at 1377.

As described further below, beyond the legal questions regarding recovery of future damages, the remaining issues in this case are either unique to Dominion's factual

---

[2] A request for rehearing was made and denied, the period for certiorai ran, and the mandate finally issued in the *Indiana Michigan* case on December 2, 2005.

circumstances, or so unlikely to benefit from rulings within at least the next two or three years (if, indeed, even then), or both, that the interests of justice now dictate that this case be allowed to proceed.

*B.* *<u>The Stay Of This Case Should Now Be Lifted.</u>*

1. *No other spent nuclear fuel cases are now stayed over the objection of the plaintiffs in those cases.* Dominion is not aware of any other spent nuclear fuel case currently pending before the Court that remains stayed over the objection of the plaintiff—in all of the spent nuclear fuel cases that remain stayed today, the respective plaintiffs have determined that their own particular circumstances continue to warrant such a stay. As described below, however, that is now not the case for Dominion.

2. *No actions are likely to occur within a reasonable time period in other cases that could be expected to facilitate resolution of this case.* One of the issues that some plaintiffs and the government have occasionally cited as potentially affecting resolution of multiple spent nuclear fuel cases is the so-called "pick-up rate" issue, or the rate by which DOE was required to commence accepting spent nuclear fuel from the industry in 1998. The pick-up rate can potentially have an affect upon damages that a plaintiff can show are due to DOE's breach. The issue was not resolved by the Federal Circuit in *Indiana Michigan*. More significantly, however, a binding appellate resolution of the issue is not on the reasonably foreseeable horizon. While the government's position has been rejected by every trial judge that has been called upon to address the argument, the issue was not squarely presented in the one other final trial court decision that has been issued to date, due to factual circumstances unique to that plaintiff. *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515 (2006). Indeed, it is not a foregone conclusion that the Court will even need to reach the pick-up rate issue in this case—the Court in *Sacramento Municipal Utility District v. United States*, No. 98-488C, recently held, after trial,

there to be recoverable damages, without ruling explicitly on the pick-up rate issue. *See,* 70 Fed. Cl. 332 (2006). There is also no guarantee that the trial judges in the two other cases that are now fully submitted after trial will reach the issue, nor that the matter will be resolved in some other pending case in the near future. Appellate resolution could mean nearly another two years after trial (using the *Indiana Michigan* case as a guide). Dominion does not believe waiting for possible resolution of the rate issue in some other case to be warranted, given: (i) the below-described harm of continued delay; (ii) the fact that Dominion believes that the so-called "rate issue" could be tried quite efficiently if it still needs to be resolved when this case is otherwise ready for trial; and (iii) the fact that Dominion would be entitled to significant damages even if the government were to prevail upon the rate issue.

One case, *PSEG Nuclear v. United States, No. 01-551C*, is currently on appeal to the Federal Circuit, regarding purported jurisdictional issues. In that appeal, however, neither party contests the Court's jurisdiction, and the likelihood of meaningful impact on this case is therefore, Dominion suggests, quite remote. More to the point, however, that appeal has now been pending for nearly nine months (with the underlying issues pending before the trial court for much longer than that), and yet no other action in this Court has been deferred (over a plaintiff's objections), in favor of resolution of the *PSEG Nuclear* appeal. Indeed, the government recently agreed, for example, to a pre-trial schedule in *Carolina Power & Light Company v. United States*, No. 04-37C (Wheeler, J.), and the Court there stated an intent to schedule the late 2007 trial date requested by the plaintiff. Dominion believes that this case should not be treated any differently.

Other issues present in other pending cases similarly do not justify continued delay. Whether this or that particular element of claimed damage is recoverable, for example, is likely

to be a utility-specific factual determination, and unlikely to present the sort of overarching guidance that could justify continued deferral of proceedings.

3. *Dominion is suffering significant economic harm by virtue of continued delay.* Dominion is still in the process of assessing its damages to date, but fully expects that the costs that it has incurred as a direct result of DOE's breaches will, though the end of calendar 2005, exceed $100 million total, in this case and in Case No. 04-0083C. Prejudgment interest is of course not available. Even using a conservative calculation of the time value of money, it is readily apparent that Dominion is suffering significant economic harm for every year of delay.

4. *Plaintiff requests that the Court enter a scheduling order for pre-trial and trial activities, and set a trial date.* For all of the reasons described above, Dominion requests that the Court set a trial date, and enter a pre-trial schedule. In other SNF cases, the government has suggested a procedure whereby the plaintiff voluntarily produces a threshold damages schedule. Dominion is generally agreeable to such an approach.

In particular, Dominion would agree to a procedure whereby it will voluntarily produce a damages schedule. This damages schedule will include an identification of categories of costs that Dominion will seek as damages, quantification of such damages, and appropriate supporting documentation. Dominion will also identify the person(s) who can provide information and explanations required for verification of the identified items or figures. Dominion recognizes that the government may wish to take traditional discovery regarding causation and reasonableness of claimed costs. Nevertheless, by agreeing to the voluntary initial production of a damages schedule and supporting materials, and by allowing the government to audit that schedule and to tailor its discovery to claimed costs in a reasonable manner, Dominion expects both parties to be able to avoid wasteful discovery. Dominion also expects to be able to avoid the tedious exercise of introducing voluminous invoice documentation and testimony into the

trial record just to establish the amounts of dollars spent, and what they were spent for. Dominion's intent is that by making a threshold damages schedule production, the parties should ultimately be able to stipulate to the amount and nature of the costs incurred.

With respect to affirmative discovery from the government, Dominion currently does not expect to need significant formal fact discovery, although it must reserve its right to pursue such discovery in light of issues that might be raised by the government as the lawsuit progresses. Indeed, if the government will agree to voluntarily produce deposition and trial transcripts, with marked exhibits, for current and former government-employee witnesses from prior spent nuclear fuel damages cases, Dominion may not need to seek any additional documents at all.

Dominion's proposed pre-trial and trial schedule is as follows:

- June 30, 2006 — Stay lifted; discovery can commence.
- October 31, 2006 — Plaintiff's damage schedules produced.
- February 28, 2007 — Plaintiff's expert reports, if any.
- June 29, 2007 — Defendant's expert reports, response to Plaintiff's damage schedules.
- August 31, 2007 — Plaintiff's rebuttal expert reports, if any.
- October 31, 2007 — Close of all discovery.
- November 16, 2007 — Exchange of exhibit, witness lists.
- December 20, 2007 — Plaintiff's pre-trial memorandum.
- January 26, 2008 — Defendant's pre-trial memorandum.
- February 2008 or as soon thereafter as the Court's schedule will allow: trial.

***<u>Defendant's Report</u>***

1. <u>Decisions Expected Soon In Other Cases Will Aid The Resolution of This Case</u>

The United States believes that the Court's indefinite stay of proceedings should remain in place. This stay serves the interest of judicial economy, and protects the resources of the parties from unnecessary waste because there remain common issues regarding the scope of the Government's obligation to all of the utility plaintiffs, which have been advanced in other cases and have not yet been decided by the Federal Circuit. With the exception of plaintiffs that have sold their nuclear facilities and seek to recover the alleged diminution in value resulting from DOE's partial breach, all of the utility plaintiffs with cases before the Court are proceeding with legally similar claims. These claims require the resolution of certain threshold issues, such as the rate at which DOE was obligated to accept fuel from the nuclear utilities with which it held contracts beginning in 1998. As Dominion recognized in the joint status report filed on December 15, 2005, "resolution of these issues in [more procedurally advanced] cases could . . . at a minimum, inform the Court's consideration of such issues if they remain contested and require resolution in this case." Joint Status Report at 2 (filed December 15, 2005).

The Government has presented evidence on this point in every trial conducted since *Indiana Michigan* and would expect to present the same evidence at trial in this matter if trial was conducted before the Federal Circuit has issued a decision on this matter.[3] However, there are SNF cases that are more procedurally advanced than this case in which this issue has been presented that should result in a decision from the Federal Circuit on this threshold issue. For example, the scope of the government's obligations may be decided by the Federal Circuit when

---

[3] In *Indiana Michigan*, the Court's determination regarding the scope of the Government's obligation was not determinative of the final result in that case. The issue of the Government's obligation was not necessary to the Court's judgment, and the United States Court of Appeals for the Federal Circuit dismissed the Government's cross-appeal on the rate issue for that reason. 112 F. Appx. 37, 2004 WL 2429837 (Fed. Cir. October 13, 2004).

it considers our pending appeal, and we expect our appellate briefing, which is due to be filed in July, to address this issue directly. *Tennessee Valley Auth. v. United States*, 69 Fed. Cl. 515 (2006), *appeal filed*, No. 2006-5073 (Fed. Cir. docketed April 19, 2006). Evidence regarding the scope of the government's obligation was presented at trial in (1) *Yankee Atomic Elec. Co. v. United States*, Fed. Cl. No. 98-126C, *Connecticut Yankee Atomic Power Co. v. United States,* Fed. Cl. No. 98-154C, and *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C (Merow, S.J.), which were tried together; and (2) *Southern Nuclear Operation Co., et al. v. United States*, Fed. Cl. No. 98-614C (Merow, S.J.), cases in which we are awaiting decisions from the Court. Any appeal from these decisions would presumably include consideration of this issue. In addition, this issue is highly relevant in *Pacific Gas & Elec. Co. v. United States,* Fed. Cl. Nos. 04-0074 & -0075 (Hewitt, J.), the trial of which was just completed on June 15, 2006, and the judge assigned to that case has represented that she intends to issue a final decision by August 2006.

Awaiting guidance from the Federal Circuit on issues common to all of the SNF cases has proven to be very productive. With the Federal Circuit's ruling in *Indiana Michigan Power Co. v. United States,* 422 F.3d 1369 (Fed. Cir. 2005), which limits the Court's consideration of damages to those incurred before the filing of plaintiff's complaint, the Court need no longer wrestle with the speculative nature of estimated future damages. In *Indiana Michigan,* the Federal Circuit held that, in a claim for partial breach, the plaintiff may "sue from time to time for the damages incurred to the date of the suit, which was defined as 'the time of institution of the action.'" *Id.* at 1377 (quoting *Restatement (Second) of Judgments,* § 26(e) & cmt. (g)); *see Pacific Gas & Elec. Co. v. United States,* 70 Fed. Cl. 758, 763 (2006) ("court interprets these directives to mean that plaintiff may seek damages only through the date of an amended

complaint").[4] This limitation on the scope of damages claims to be considered has simplified the cases that are now proceeding to trial. Similarly, if the Court were to await a Federal Circuit decision regarding the scope of the DOE's obligations regarding the rate of acceptance, that ruling could simply be applied in this case to determine the scope of the damages owed to Dominion. There should also be other Federal Circuit precedents to apply regarding the types of damages that the utility plaintiffs may obtain in pursuit of their partial breach claims.

Finally, with regard to the appeal of *PSEG Nuclear L.L.C. v. United States*, 64 Fed. Cl. 37 (2005), *appeal docketed*, No. 05-5162 (Fed. Cir.), the plaintiff there has appealed the Court's order dismissing its contract claims for lack of jurisdiction. In deciding this appeal, in which oral argument was conducted on May 1, 2006, the Federal Circuit may provide guidance regarding the scope of the jurisdiction of this Court as well as the jurisdiction of the United States Court of Appeals for the District of Columbia Circuit to consider claims by utilities under the Standard Contact. Continuing the stay of the case for at least another six months should provide time for the Federal Circuit's resolution of this threshold issue.

---

[4] Dominion's assertion that they stay should now be lifted because Dominion is suffering "significant economic harm" is a bit misleading because, at the present time, the Court, in this partial breach of contract case, is limited to consideration of the damages incurred as of the date of the filing of Dominion's complaint, December 18, 2003. Simply lifting the stay in this case will not alter Dominion's ability to pursue additional damages that it allegedly continues to incur. To the extent that Dominion has incurred additional damages since the filing of its complaint, Dominion must move to amend its complaint to provide the Court with jurisdiction to consider those additional damages. *See, e.g.*, *Indiana Michigan*, 422 F.3d at 1378 (discussing how, for future post-complaint damages, a plaintiff in an SNF case must bring a future action within six years of accrual to invoke this Court's jurisdiction). The benefit of this procedure is that it provides the plaintiff with a firm date through which damages will be considered, leaving any additional damages incurred after that date for consideration in another matter.

2. Prior To The Establishment Of Any Schedule, Plaintiff Should Provide Its Damages Submission With Experts Reports

If the Court determines that the current stay of proceedings should be lifted, defendant respectfully requests that the Court order that Dominion provide its damages submission, with expert reports, to the Government prior to the establishment of any schedule for further proceedings in this case. In the cases that have proceeded to trial, the Government has learned that it can most efficiently proceed with discovery and trial preparation when it has a full explanation of plaintiff's claims and theories of causation, usually set out in the reports of plaintiff's experts, at the outset. With these explanations, the Government conducts an audit and propounds properly tailored discovery requests. To date, the Government has not received any information regarding Dominion's claims[5] and, therefore, cannot provide a meaningful estimate of the time that it will require to audit Dominion's claims until it has an opportunity to review the damages claims and the supporting material to determine how much more work will be needed to determine if the claimed damages are adequately documented. Moreover, the Government cannot accurately estimate the amount of time that it believes necessary to conduct the necessary discovery and provide responsive expert reports until it reviews these materials. Thus, starting with plaintiffs claim and reports is the most efficient way to proceed.

In the Government's experience, Dominion's proposal to delay submission of its expert reports for the four months after submission of its damages schedules will be inefficient, even if Dominion's damages schedules are properly detailed and include an identification of categories of costs, the quantification of such damages and the appropriate supporting documentation, and the identification of persons who can provide information and explanation of these claims. Notably, in *Southern Nuclear Operating Co. v. United States*, No. 98-614C (Merow, S.J.), and

[5] Because of the continuing stays of the case, the parties have not exchanged initial disclosures.

*Pacific Gas & Electric Co. v. United States*, No. 04-0074 & 0075 (Hewitt, J.), bifurcation of the submission of the damages claim from the expert reports led to the duplication of discovery efforts by the Government because the damages claims had changed substantially, in both structure and amount, between the time of the submission of the claim and the submission of the expert reports. When presented with these changes, the Government's auditors had to reanalyze and reconduct portions of their original audit and examine new cost categories that had been added by the plaintiffs' experts. In addition, Government counsel have been required to reopen depositions of plaintiffs' personnel to examine the basis for the plaintiffs' expert's calculations and determinations. In *Southern Nuclear*, the changes in plaintiffs' damages claim were so significant that the Government was granted an enlargement of three months to complete its expert reports and the trial date was moved approximately two months. In *Pacific Gas and Electric*, the changes to the claim were made after the close of fact discovery, and Government counsel had to reopen several depositions. To avoid this unnecessary duplication, the Government asks that it be provided with the damages claim and the expert reports at the same time and before a schedule for further proceedings is established.

The Government recognizes that the Court has declined to grant fully the Government's same request made in *Southern California Edison Co. v. United States of America*, No. 04-109C, with regard to deferring the scheduling of further proceedings until the Government has had an opportunity to review plaintiff's claim. However, the Government notes that the Court has required the plaintiff in that case to provide a damages claim at the outset, has scheduled an appropriate discovery period, and has declined to enter a schedule for trial until the close of discovery. If the Court should also choose to schedule discovery in this case, the Government asks that the Court likewise require the expert reports upfront, establish a similarly appropriate period of discovery, and not enter a schedule for trial until the close of discovery.

This approach also may be necessary, in part, because counsel for the parties may have several cases ready for trial at roughly the same time. In addition to this case, plaintiff's counsel, in status reports filed today, is seeking to lift the stays in *Dominion Resources, Inc. et al v. United States*, No. 04-0083C, and *Dominion Resources, Inc. et. al v. United States*, No. 04-0084C, and suggesting that trial be scheduled to begin in February 2008. In addition, as noted above, the Court has established a discovery schedule in *Southern California Edison Co. v. United States*, No. 04-109C (Baskir, J.), which currently provides for the close of discovery on October 31, 2007, and the parties to advise the Court as to the schedule for further proceedings at that time. Finally, as plaintiff's counsel notes in plaintiff's section of this report, trial may be scheduled in *Carolina Power & Light Co. v. United States*, No. 04-37C (Wheeler, J.), at the end of 2007. Because counsel for the parties cannot be available for simultaneous trials, it would be advisable to allow discovery to proceed and then schedule trial dates when the cases have been developed sufficiently.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brad Fagg
BRAD FAGG
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 616-0170
Facsimile: (202) 514-8624

Attorneys for Plaintiffs

Attorneys for Defendant

July 10, 2006

CERTIFICATE OF FILING

I hereby certify that on this 10th day of July, 2006, a copy of the foregoing "JOINT STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brad Fagg