IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **DOMINION RESOURCES, INC.,**<br>**DOMINION NUCLEAR CONNECTICUT, INC.,**<br>Plaintiffs,<br>v.<br>**UNITED STATES OF AMERICA,**<br>Defendant. | Case No. 04-83C<br>Judge Bruggink |
| **DOMINION RESOURCES, INC.,**<br>**VIRGINIA ELECTRIC AND POWER COMPANY,**<br>Plaintiffs,<br>v.<br>**UNITED STATES OF AMERICA,**<br>Defendant. | Case No. 04-84C<br>Judge Bruggink |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO AMEND THE SCHEDULING ORDER OR, IN THE ALTERNATIVE, TO EXCLUDE EVIDENCE OF PLAINTIFFS' ALTERNATIVE CAUSATION MODEL**

Plaintiffs Dominion Resources, Inc., Dominion Nuclear Connecticut, Inc., and Virginia Electric and Power Company (collectively for these purposes "Dominion"), respectfully submit this response to defendant's motion dated February 22, 2008.

In a prior conference, the Court suggested that there might be advantages to scheduling the pretrial conference sufficiently far in advance of the trial date to afford the opportunity to identify and address any open matters. Plaintiffs concur. Plaintiffs therefore did not agree to the government's request to reschedule that pretrial conference, but we of course defer to the Court's

preferences in that regard.

With regard to the government's requested enlargement of the time within which to prepare and file its pre-trial brief, we generally do not oppose reasonable requests by government counsel for enlargements, for example due to workload demands or scheduling conflicts. The present motion, however, is based upon such a fundamental mischaracterization of the circumstances purportedly necessitating the enlargement that plaintiffs simply could not agree, and felt compelled to submit this response to correct and clarify the record.

It is, emphatically, not the case that plaintiffs "desire to change their theory of recovery." 2/22/08 Def. Mot. at 4. The document to which the government so strenuously objects is a straightforward summary of facts and circumstances that have long been known to the government, contrary to the suggestions in the government's motion. The actual facts regarding that document are as follows.

As detailed at pages 27-45 of plaintiffs' pre-trial brief dated February 8, 2008, the evidence at trial will establish that DOE was obligated not only to commence accepting spent nuclear fuel on January 31, 1998, but to do so in a reasonably meaningful manner so as to prevent, in the aggregate, additional utility expenditures for at-reactor storage of spent nuclear fuel after that date, and to begin to work off the substantial backlog of accumulated spent fuel at utility sites. The evidence will further establish that an annual aggregate industry-wide steady-state acceptance rate of 3000 MTU/year has been consistently identified as the reasonable rate that should be applied to accomplish that purpose. As described in our pretrial brief, the documentary and testimonial records supporting these propositions are, literally, overwhelming.

Spent fuel cooling pool capacities and actual spent fuel discharges in the real world at the Dominion plants are, as one would expect, well-documented factual matters not subject to serious dispute. In order to demonstrate that Dominion's existing storage capacities would have

been sufficient to avoid the expensive mitigation measures undertaken by Dominion if DOE had commenced performance in 1998 at a reasonable rate, plaintiffs generated spreadsheets showing that real-world factual capacity and discharge information, and simply overlaid assumptions of DOE performance derived from DOE documentation. This straightforward, mechanical exercise was thoroughly explored in discovery by the government.

There are, however, perhaps a dozen or more DOE documents reflecting various interim "ramp ups" to the 3000 MTU/year date. It is likely that arguments for application of different ramp-up rates could be made, although DOE's massive breach has complicated the task of picking one hypothetical ramp-up scenario over the other. So long as the core principle (*i.e.* precluding, in the aggregate, the need for additional utility at-reactor storage after January 31, 1998) is preserved, Dominion does not believe it particularly productive or useful to debate the precise ramp up rates, nor does Dominion believe that it is necessary for the Court to engage in such an exercise. For purposes of calculating the damages claimed in this proceeding, Dominion utilized the most recent official DOE publication setting forth industry fuel discharge data and pickup rankings, namely a 2004 Annual Capacity Report and Acceptance Priority Ranking (ACR/APR). That ACR/APR sets forth aggregate industry wide acceptance rates of 400 MTU for year one, 600 MTU for year two, 1,200 MTU for year three, 2,000 MTU for year four, and 3000 MTU/year thereafter.

During oral arguments in certain pending spent fuel cases at the United States Court of Appeals for the Federal Circuit on February 4, 2008, questions from the panel identified a 1987 ACR published by DOE in connection with discussion of pick-up rate issues. That 1987 document reaches 3000 MTU/year but with a ramp-up rate different than the 2004 ACR, namely more quickly in the early years, but less quickly in subsequent years.[1] While the timing and

[1] Specifically: 1,200 MTU/yearf for years one through five, 2,000 MTU for year six, 2,650 MTU/year for years five through ten, and 3,000 MTU/year thereafter.

result of decisions in the appeals in the Federal Circuit cannot of course be predicted, Dominion determined that it might be helpful to have the record in this case include a specific alternative calculation of damages pursuant to the ramp-up rates contained in that 1987 ACR document.[2] Dominion therefore undertook the straightforward exercise of applying those 1987 DOE pick-up rates (about which the government was of course and by definition aware) to the same exact factual storage and discharge information long ago provided to and thoroughly reviewed by the government. That is the document about which the government so strenuously complains. Nothing more.

We wish to emphasize several additional facts regarding the government's motion. First, the government trial team in this case was present at the proceedings in the Federal Circuit, and so their professed surprise at the basis for the produced spreadsheet rings a bit hollow. Moreover, although one would not know it from their motion, we explained the reason for the alternative calculation to the government. Second, the alternative calculation does not materially change the essential elements of Dominion's claim, and actually results in claimed damage amounts that are approximately $3 million *less than* Dominion's current claim, as readily determined by cost documentation already in the government's possession. Any complaint of prejudice by the government is therefore unavailing. Third, and although Dominion does not believe it to be necessary, Dominion has offered to make the witness who would testify about the alternative calculation available for a deposition (the fifth day, for him), and so any contention of prejudice by the government is unavailing for that additional reason as well. Fourth, the government's implicit assertion that Dominion was required to perform specific calculations at every conceivable ramp up rate (again, there are likely a dozen or more) and that Dominion

[2] Contrary to the government's assertion that we "intend to introduce" the alternative damage calculation exhibit at trial, 2/22/08 Def. Mot. at 2, we are still assessing that issue, and explicitly informed the government only that we "may" use the document. In an excess of caution, we disclosed the document to the government far in advance of the trial.

should be penalized because it "chose not to do so,"' 2/22/08 Def. Mot. at 4, is not sensible. We respectfully suggest that this proceeding should not be a game of "gotcha," but, rather, an endeavor to arrive at a correct result that is in accord with the actual facts and the law. The government's motion, and in particular its unfounded alternative request that evidence be excluded, does not appear to comport with the latter principles.

The government already has Dominion's pre-trial brief, and the original scheduling order gave the government sufficient time to respond. We do not believe that the alternative damage calculation spreadsheet requires an additional month for the government to submit its pretrial brief, and the government has not identified any other reason for the requested extension. We are therefore constrained to oppose the government's request.

Respectfully submitted,

s/ Brad Fagg

Brad Fagg
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

Attorneys for Plaintiffs

Of Counsel:

Paul M. Bessette
D. Bruce McPherson
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Telephone: (202) 739-3000
Facsimile: (202) 729-3001

February 25, 2008

CERTIFICATE OF FILING

I hereby certify that on this 25th day of February, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Brad Fagg