# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **DOMINION RESOURCES, INC.,**<br>**DOMINION NUCLEAR CONNECTICUT, INC.,**<br>Plaintiffs,<br>v.<br>**UNITED STATES OF AMERICA,**<br>Defendant. | Case No. 04-83C<br>Judge Bruggink |
| **DOMINION RESOURCES, INC.,**<br>**VIRGINIA ELECTRIC AND POWER COMPANY,**<br>Plaintiffs,<br>v.<br>**UNITED STATES OF AMERICA,**<br>Defendant. | Case No. 04-84C<br>Judge Bruggink |

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO DESIGNATIONS

Pursuant to Rule 7.2(b) of the Rules of the United States Court of Federal Claims, Plaintiffs in Case No. 04-83C, Dominion Resources, Inc., and Dominion Nuclear Connecticut, Inc., and plaintiffs in Case No. 04-84C, Dominion Resources, Inc. and Virginia Electric and Power Company (also d/b/a "Dominion Virginia Power") (collectively referred to for these purposes as "Dominion"), respectfully reply to Defendant's Response to "Plaintiff's Notice of Deposition and Trial Testimony Designations or, Alternatively, Motion for Leave to Admit Prior Testimony Into Evidence."

First, the government's objections should be rejected because those objections are based upon what this Court has correctly identified as an "erroneous" view of "the relationship between the Federal Rules of Evidence and the rules of procedure respecting admissions." *Globe Savings Bank v. United States*, 61 Fed. Cl. 91, 95 (2004). The government nevertheless continues to argue that some showing of witness unavailability is required (it is not), and that the preference for live testimony somehow renders Rule 801(d) inapplicable unless the witnesses are unavailable (it does not). Moreover, plaintiffs in any event do plan to call multiple live witnesses on the so-called acceptance rate issues that are the subject of the designations, and emphatically do not seek to transform the trial into a "matter of document review." (4/4/08 Govt. Opp. at 5.)

Second, the government also purports to challenge plaintiffs' designations on the grounds that Dominion has not made the required showing under Rule 801(d)(2) for "all" of the admissions being offered, (4/4/08 Govt. Opp. at 2), although the government does not identify any specific testimony that fails to satisfy the applicable criteria. Plaintiffs in their notice described the position and role of each witness, and how his or her statements fall within the scope of employment. The government's objections regarding the applicability of Rule 801(d)(2) are vague, not well founded, and should be rejected.

Third, the government lodges a host of specific objections to almost every individual passage identified by plaintiffs. Those objections are uniformly unfounded but, if anything, go to weight of the matters, not to their admissibility.

This type of prior testimony, and indeed much of this exact testimony, has been properly admitted in multiple previous spent nuclear fuel damages cases before the Court. *See, e.g.*, *Carolina Power & Light Company et al. v. United States*, No. 04-37 (Order, November 8, 2007); *Wisconsin Elec. Power Co. v. United States*, No. 00-697 (Order, August 16, 2007); *Sacramento*

*Mun. Util. Dist. v. United States*, No. 98-488C (Order, March 16, 2005). For the reasons described below, plaintiffs request that the government's objections to plaintiffs' designations be overruled, and the designations identified by plaintiffs be admitted.

## I. NO MOTION OR REQUIREMENT TO "SHOW CAUSE" IS NECESSARY FOR ADMISSION OF PRIOR TESTIMONY PURSUANT TO RULE 801(d)

The government treats plaintiffs' notice as a motion, based on the government's incorrect assertion that a motion "is the appropriate means by which to seek the admission of testimonial designations." (4/4/08 Govt. Opp. at 1 n.1.) The government further contends that "Dominion has not shown cause" why the designated testimony should be admitted *in lieu* of live testimony. (4/4/08 Govt. Opp. at 2.) With these arguments, the government continues to confuse the requirements of the Federal Rules of Civil Procedure with the Federal Rules of Evidence. When seeking admission under Rule 801(d), a party need not file a motion to show cause:

> Any party intending to present substantive evidence by way of deposition testimony, ***other than as provided by Fed. R. Evid. 801(d)***, shall serve and file a separate motion for leave to file the transcript of such testimony. The motion shall show cause why the deposition testimony should be admitted and identify specifically the portions of the transcript(s) the party intends to use at trial. See RCFC 32(a)(2) and (3).

RCFC App. A, para. 15(b) (emphasis added). *Cf. Globe Savings Bank v. United States*, 61 Fed. Cl. 91, 95 (2004) ("That the requirements of Fed.R.Evid. 801(d)(2) are independent of those of RCFC 32(a) is also indicated in the Court's case management procedures, which specify that a separate motion be filed for admission of a deposition pursuant to RCFC 32(a) but not under Fed.R.Evid. 801(d)(2).").

Simply stated, Rule 801(d) is <u>independent</u> of Rule 32(a), and thus the government's "view of the relationship between the Federal Rules of Evidence and the rules of procedure respecting admissions is erroneous." *Globe Savings Bank*, 61 Fed. Cl. at 95 ("Fed.R.Evid.

801(d)(2)(D) and RCFC 32(a) regulate the admissibility of depositions in different ways by allowing admission in differing circumstances."). In *Globe Savings* (and subsequent cases) this Court "squarely rejected" the government's argument that the common law's preference for live testimony precludes the admission of deposition testimony absent a showing that the witness is unavailable to testify personally at trial. *E.g.*, *Long Island Savings Bank, FSB v. United States*, 63 Fed. Cl. 157, 163 (2004); *Globe Savings*, 61 Fed. Cl. at 94-95 (explaining that "[t]he common law's preference for live testimony has no bearing on the use of party admissions as evidence.").

Undeterred, the government relies on common-law "axioms" and the requirements under Rule 32(a) that have no bearing on admission of testimony under Rule 801(d). In addition, the government relies on case law that for the most part "addresses rules or statutes that explicitly require a showing of the unavailability of the witness." *Long Island Savings Bank*, 63 Fed. Cl. at 163. Specifically, the government continues to rely upon the following cases, which were addressed in *Long Island Savings Bank*: *Griman v. Makousky*, 76 F.3d 151 (7th Cir. 1996) (applying Fed.R.Civ.P. 32); *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977) (addressing Fed.R.Evid. 804 and Fed.R.Evid. 803(24) and observing that the latter rule "has a built-in requirement of necessity"); *Napier v. Bossard*, 102 F.2d 467, 468 (2d Cir. 1939) (discussing Section 304 of the New York Civil Practice Act, which provided that " 'a deposition taken within the state, except that of a party, taken at the instance of an adverse party . . . shall not be read in evidence . . . unless it appears to the satisfaction of the court that the deponent is then dead or is out of the state' "). The government's reliance on the following cases is similarly misplaced: *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 962-63 (10th Cir. 1993) (addressing Fed.R.Civ.P. 32 and Fed.R.Evid. 804); *Young & Associates Public Relations, L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521 (D. Utah 2003) (applying Fed.R.Civ.P. 32(a)); *Banks v.*

*Yokemick*, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) (same); *American Steel Works v. Hurley Constr. Co.*, 46 F.R.D. 465, 470 (D. Minn. 1969) (relaxing 100-mile limitation on mileage fees for the travel of crucial witnesses).

The government also relies upon *Kolb v. County of Suffolk*, 109 F.R.D. 125 (E.D.N.Y. 1985). As this Court pointed out in *Long Island Savings Bank*, "[a]lthough the court in *Kolb* correctly observed that admission of deposition testimony as evidence under Fed.R.Civ.P. 32(a) is dependent upon meeting the requirements of the rules of evidence, the court incorrectly assumed that the reverse is also true." 63 Fed. Cl. at 163. It is also worth noting that the plaintiff in *Kolb* intended to establish his entire case by introducing complete deposition transcripts. *Id.* In the present case, plaintiffs plan to call several government employees to testify, and the prior admissions are being offered in the interest of developing a complete record in the most efficient manner. Plaintiffs thus urge the Court to once again follow the reasoning set forth in *Globe Savings* (and subsequent cases), which adheres to the plain meaning of the rules of evidence. *Id.* ("Notably, this Court has been unable to locate any decision that has relied on *Kolb* for the propositions that Fed.R.Evid. 801(d)(2)(D) requires a showing of unavailability of the witness or that Fed.R.Evid. 801(d)(2)(D) is dependent upon RCFC 32(a). Those propositions contravene the plain and straightforward text of Fed.R.Evid. 801(d)(2)(D)."). Finally, there is no basis to argue that the offered evidence poses an undue risk (or indeed any risk) of "prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant." *United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir. 1995) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

In short, "Fed.R.Evid. 801(d)(2)(D) does not require unavailability of the declarant as a witness." *Long Island Savings Bank*, 63 Fed. Cl. at 163. And it is a "widely accepted rule that

admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility." *Globe Savings*, 61 Fed. Cl. at 96 (citation omitted).

II. THE REQUIREMENTS OF RULE 801(d) HAVE BEEN SATISFIED BY PLAINTIFFS, AND THE GOVERNMENT HAS NOT SHOWN OTHERWISE

The government also asserts that "Dominion has not met its burden to establish that *at least some* of the testimonial designations that it seeks to admit into the record of this case constitutes admissions by the United States." (4/4/08 Govt. Opp. at 7 (emphasis added).) The government cites one purported "example," addressed below, but nowhere else identifies how any of the proffered testimony fails to meet the applicable standards.

Dominion carefully and methodically set forth in its notice of designations how the requirements for admission under Rule 801(d)(2)(D) are satisfied for each of the witnesses whose statements are being offered. (3/17/08 Pl's Notice at 2-15.) Specifically, Dominion set forth the work history of each witness to show that the statements were made during his or her employment with the government and concern matters within the scope of his or her duties. The government's vague assertion, reiterated on page 9 of its response, that the foundation for "some" (but not "all") of the witness testimony has not been established is not a sufficient challenge to Dominion's notice. Dominion should not have to guess which admissions the government has accepted and which it is challenging.

Moreover, the *only* specific "example" that the government cites is not, in fact, an instance of insufficient foundation or inapplicability of Rule 801(d)(2). The government argues that the statements of Lake H. Barrett about his work designing a system to accept spent fuel at around 3,000 Metric Tons Uranium ("MTU") per year is not an admission because the 3,000 MTU rate was set before Mr. Barrett started working on an acceptance system to implement it. (4/4/08 Govt. Opp. at 9.)

When Mr. Barrett started working for DOE in 1985, he was directly involved in designing the spent fuel acceptance system:

> Q What was your initial position at the Department of Energy?
> A Division director, systems and transportation or something to that effect.
> Q And what did that position involve?
> A I was responsible for the development of the transportation systems to move spent fuel and high-level waste to the DOE facilities from their current locations was the primary job, and also for the systems engineering for the entire program.
> Q Entire program you're referring to what?
> A The civilian and all the different sites that we were looking at, the systems engineering requirements documents and the systems engineering structure for all of the civilian radioactive waste management program.

Deposition of Lake H. Barrett (Volume 1) April 22, 2002 page 44:5 through 44:20.

Mr. Barrett's testimony that DOE in 1986 was designing a system to accept spent fuel at around 3,000 MTU per year from the domestic nuclear industry is therefore clearly within the scope of his employment. *Id.* at page 51:17 through 52:1.

The fact that DOE, as the government points out, developed the 3000 MTU pick up rate before Mr. Barrett started working on a system to accept fuel at this rate, of course, does not bar him from testifying about the rate and its application in 1986. Moreover, prior to working at DOE, Mr. Barrett worked at the NRC in a position related to spent fuel acceptance, and during that time worked with officials from DOE. Deposition of Lake H. Barrett (Volume 1) April 22, 2002 page 38:14 through 40:2. And "[t]here is no requirement that the particular agency at which a deponent was employed at the time of the deposition match the subject matter of the admissions. The party-opponent is the United States, not a particular agency." *Long Island*, 63 Fed. Cl. at 157.

## III. PLAINTIFFS DO NOT OBJECT TO DEFENDANT'S COUNTER-DESIGNATIONS AND SUBMIT THAT DEFENDANT'S OBJECTIONS GO TO WEIGHT, NOT ADMISSIBILITY

The government has made objections and counter-designations in the event that the Court allows the designated testimony. Plaintiffs have no objections to defendant's counter-designations. With regard to defendant's objections, they are generally baseless. For example, defendants object to the following designation from Mr. Barrett's testimony for lack of foundation:

> Q In 1986 how many MTUs per year did you attempt to design a system to accept?
> A I don't recall a specific number, but it was -- I don't recall a specific number. It's in the records.
> Q Would 3,000 refresh your recollection?
> A That's probably about right.
> Q And how did you come to the 3,000 number?
> MR. CRAWFORD: Objection, foundation.
> A I'd have to go back and look at records, which I have not done. It is the evolution of the design receipt rates for the first repository, second repository, the MRS in the system. My recollection is the MRS was to receive 3,000 tons a year circa that time prior to the amendments act, which was in excess of the generation rate of around 2,000.
> Q: That was important, wasn't it, that it be in excess of the generation rate?
> MR CRAWFORD: Objection, vague.
> A: Well, important? Yes, in my opinion it was significant that you design a system to remove the backlog of materials that were accumulating under the intent of the act.

Deposition of Lake H. Barrett (Volume 1) April 22, 2002 page 51:17 through 52:17. As explained above, it appears that the basis for the foundation objection is that the 3000 MTU rate was developed before Mr. Barrett joined the program. (4/4/08 Govt. Opp. at 9.) The specific question posed and answered, however, is how did Mr. Barrett, when exercising his

responsibilities and designing the spent fuel acceptance system in 1986, come to the 3000 MTU number, *not* how did DOE originally come to that number. The second objection, that the word important is somehow vague, is also baseless.

In another example, the government objects to the following designation of Mr. Barrett's testimony for lack of foundation and mischaracterization of prior testimony:

> Q What is a DCS?
> A Well --
> MR. CRAWFORD: Objection. Asked and answered.
> Q I understand the title.
> A Delivery commitment schedule.
> Q Do you understand what role it played in the overall SNF process?
> MR. CRAWFORD: Objection, foundation.
> A These were all part of the administrative details of the contract that I did not pay much management policy attention to.
> Q So in your view was a DCS what you referred to, Mr. Barrett, I think the term was administrivia?
> A That's correct.

Deposition of Lake H. Barrett (Volume 1) April 22, 2002 page 217:3 through 217:17. The question of whether Mr. Barrett understood what role the DCS played in the spent fuel process was merely aimed at finding out what he knew, and thus it is difficult to see how it lacked foundation. The "mischaracterization of prior testimony" objection was curable but not made at the time of the deposition and is thus waived. Defendant, however, may counter-designate any related prior testimony it believes will assist the Court in determining whether Mr. Barrett indeed considered the Delivery Commitment Schedule paperwork associated with the Standard Contract as "administrivia."

If the Court decides to admit plaintiffs' designations only after it rules on all of defendant's objections on a line-by-line basis, plaintiffs respectfully request an opportunity to

address each one. Plaintiffs, however, respectfully submit that defendants' purported objections are more properly considered in connection with assessing the weight of the testimony, as opposed to its admissibility.

IV. CONCLUSION

Plaintiffs' designations clearly satisfy the requirements of Rule 801(d) of the Federal Rules of Evidence, and the factual foundation for admission of the designated testimony under Rule 801(d) has not been successfully challenged by the government. Plaintiffs, therefore, respectfully ask the Court to overrule defendant's objections and accept plaintiffs' designations into evidence.

DATED: April 14, 2008

Respectfully submitted,

s/ Brad Fagg

Brad Fagg
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

Attorneys for Plaintiffs

Of Counsel:
Paul M. Bessette
David M. Kerr
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Telephone: (202) 739-3000
Facsimile: (202) 729-3001

**CERTIFICATE OF SERVICE**

I, Brad Fagg, hereby certify that on this 14th day of April, 2008, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Brad Fagg
Brad Fagg